# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40762

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2015

Lyle W. Cayce
Clerk

In the Matter of:  MARCO A. CANTU; ROXANNE CANTU,

Debtors

------------------------------

MARCO A. CANTU; ROXANNE CANTU,

Appellants

v.

GEORGE W. STONE,

Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:13-CV-292

Before BENAVIDES, SOUTHWICK, and COSTA, Circuit Judges.

PER CURIAM:*

This is the companion case to *Cantu v. Schmidt (In re Cantu)*, --- F.3d ----, 2015 WL 1809013 (5th Cir. Apr. 16, 2015), which posed the question whether the bankruptcy estate or the Cantus owned malpractice and fraud claims

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40762

asserted against Ellen Stone, the attorney who represented the Cantus during their chapter 11 bankruptcy. We held that the claims belonged to the estate because they accrued prior to the conversion of the chapter 11 reorganization to a chapter 7 liquidation. *Id.* at *8. This case raises the same issue for the accounting malpractice case that was filed against George Stone, an accountant and the husband of Ellen Stone.

*Cantu v. Schmidt* provides a detailed account of the bankruptcy proceedings. In brief, Marco and Roxanne Cantu and their wholly owned corporation, Mar-Rox, Inc. filed for chapter 11 bankruptcy in May 2008. A month later, they hired George Stone to perform accounting services in connection with the bankruptcy. He provided those services until the bankruptcy was converted to a chapter 7 liquidation in June 2009. During his employment, George Stone charged $37,195.50 for accounting fees and expenses that the bankruptcy court approved in September 2009. *In re Cantu*, No. 08-70260 (Bankr. S.D. Tex.), Docket Entry No. 1275.[1] In February 2011, the bankruptcy court denied the Cantus discharge, citing the "omissions, misstatements, and controversies" that plagued the Cantu and Mar-Rox bankruptcies. *See Schmidt v. Cantu (In re Cantu)*, 2011 WL 672336, at *1 (Bankr. S.D. Tex. Feb. 17, 2011).

The Cantus later filed a lawsuit in state court against George Stone for misconduct that occurred during the pendency of the chapter 11 case. The Cantus asserted the following causes of action: (1) accounting malpractice, in part for failing to meet with the Cantus' attorney to prepare documents required to obtain permission to use cash collateral; (2) violations of the Texas Deceptive Trade Practices Act; (3) gross negligence for agreeing to handle two

---

[1] Although the bankruptcy court approved the fees on September 4, 2009, most of the fee had already been paid, and all of the fees and expenses were incurred prior to conversion in June 2009. *See id.*, Docket Entry No. 1121-1.

2

No. 14-40762

complex bankruptcies despite a lack of expertise; and (4) fraudulent misrepresentation and inducement based on statements George Stone made regarding his experience and familiarity with chapter 11 bankruptcies. "Fee forfeiture and reimbursement" was among the relief requested. George Stone removed the case to federal court, where it survived a remand motion.

The procedural history of this case thus departs from that of *Cantu v. Schmidt*, which is so named because the bankruptcy trustee Schmidt was also a party to the malpractice suit against Ellen Stone. In this case, the trustee was not a plaintiff or intervenor. George Stone raised the issue whether the claims belonged to the trustee or the Cantus by filing a motion for summary judgment arguing that the Cantus lacked standing because the causes of action belonged to the estate. Relying on its ruling in the "similarly situated" adversary proceeding brought by the Cantus and trustee Schmidt against attorney Stone, the bankruptcy court found that the causes of action asserted against accountant Stone were owned by the bankruptcy estate. It therefore dismissed the Cantus' suit. The Cantus sought review in the district court, which affirmed. In the meantime, the trustee had entered into a $281,710.54 settlement with George Stone, which the bankruptcy court approved.[2]

In this appeal, the Cantus challenge the dismissal of the adversary proceeding they brought against George Stone.[3] Despite the different procedural posture (in the case against their attorney, the Cantus were appealing the ruling that the settlement funds belonged to the estate; here

---

[2] Unlike in the case against their attorney, in which both the Cantus and the trustee were part of the settlement agreement, the Cantus did not take part in the settlement with the accountant. *See In re Cantu*, No. 12-07023 (Bankr. S.D. Tex.), Docket Entry No. 53.

[3] The Cantus also argue that the bankruptcy court lacked jurisdiction. This issue also turns on who owns the claims asserted against George Stone because federal jurisdiction undoubtedly exists if the claims belong to the estate. *See* 28 U.S.C. § 1334 (district courts have jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11").

3

they are appealing the bankruptcy court's dismissal of their claims for lack of standing), the issue in this appeal is the same as the one we resolved in *Cantu v. Schmidt*: whether the causes of action belong to the estate or to the Cantus individually.[4]  For the reasons stated in that earlier opinion, 2015 WL 1809013, at *5–8, we find that the misconduct alleged against accountant Stone—which echoes that alleged against attorney Stone—resulted in injuries to the estate during the pendency of the chapter 11 bankruptcy.  For example, the Cantus alleged that although George Stone knew he was required to prepare documents related to the Cantus' motion for use of cash collateral, he failed to meet with the Cantus' attorney to provide those documents.  As discussed at length in *Cantu v. Schmidt,* the Cantus' improper use of cash collateral depleted the estate's assets, which could have been used to pay creditors.  *See id.* at *6.  Additionally, George Stone allegedly failed to include a projected disposable income[5] in the Cantus' plan of reorganization, which the bankruptcy court eventually denied, in part because the Cantus could not show that it met the absolute priority rule.  *See id.* at *1 & n.2, *7 (explaining how filing a nonconfirmable plan of reorganization that violated the absolute priority rule harmed the estate and its creditors).  Finally, the bankruptcy court approved $37,195.50 in accounting fees and expenses for the year George

---

[4] The different procedural posture would present one wrinkle if we were to rule in favor of the Cantus.  Because they did not appeal the bankruptcy court's approval of the settlement between George Stone and the trustee, it is not clear that a reversal in this appeal could undo that settlement.  If would, however, allow the Cantus to pursue their suit against George Stone, who in that event would perhaps be facing the possibility of being liable to the Cantus after settling with the trustee.  As mentioned *supra* note 2, the settlement did not include the Cantus, so it did not release any claims they might have.  Because we affirm the bankruptcy court's dismissal of the Cantus' claims, we need not decide what the effect of reversal would be on the trustee's settlement.

[5] The Cantus alleged that Mr. Cantu had a multimillion dollar law practice before bankruptcy and that by including a projected disposable income of more than a million dollars a year—which they argued was the likely income from Mr. Cantu's continued "fender bender practice"—the Cantus could have shown that they could feasibly pay off their unsecured creditors with future income.

No. 14-40762

Stone worked for the Cantus during the chapter 11 bankruptcy. Assuming he misrepresented his expertise to obtain the Cantus' business, the estate was injured the moment it disbursed any fees and expenses to him. *See id.* at *7 ("The fraudulent inducement claim alleging that Stone misrepresented [his] qualifications thus resulted in injury to the estate through the payment of these fees, and the estate could have asserted a preconversion claim seeking to recover them.").

Because the misconduct alleged against George Stone that gave rise to the settlement depleted the estate's assets, delayed the bankruptcy, and injured the creditor body by preventing confirmation of a reorganization plan that could have resulted in a larger recovery for the creditors, the causes of action against him accrued prior to conversion and therefore belong to the estate rather than the Cantus. The district court is AFFIRMED.